IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN OLSEN, *on behalf of himself and those similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> ED NAPLETON AUTOMOTIVE GROUP; NORTH AMERICAN AUTOMOTIVE SERVICES, INC., d/b/a Ed Napleton Automotive Group; NAPLETON'S ARLINGTON HEIGHTS MOTORS, INC., d/b/a Napleton's Arlington Heights Chrysler Dodge Jeep Ram, <br><br> Defendants. | Case No. 1:24-cv-08904 <br><br> JURY TRIAL DEMANDED |

**AMENDED CLASS ACTION COMPLAINT**

**I.     NATURE OF THE CASE**

1.    This case arises from Defendants' practice of accessing the personal credit information of Plaintiff and members of the putative class by procuring consumer reports (also called credit reports) about them without any legal basis to do so. This unlawful conduct is not only a violation of privacy but is also a violation of section 1681b(f) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, a federal statute over which this Court has concurrent jurisdiction.

2.    Out of concern for consumers' privacy, consumer reports may only be disseminated or obtained for the very limited purposes set forth in FCRA section 1681b. Users of consumer reports like Defendants may obtain a report for "no other" purpose. 15 U.S.C. § 168lb(a)(3).

3. This consumer class action challenges the policy and procedure of Defendants, which unlawfully obtained the consumer reports of Plaintiff and the putative class under the false premise that they had "applied for a loan or credit," and seeks class-wide relief for Defendants' invasion of consumer privacy and illegal acquisition of consumer reports in violation of FCRA section 1681b.

## II. THE PARTIES

4. Plaintiff Brian Olsen, an individual, is a "consumer" as defined by section 1681a(c) of the FCRA. He is a resident of Illinois.

5. Defendant Ed Napleton Automotive Group ("ENAG") is a business entity with its principal place of business One Oakbrook Terrace, 6th Floor, Oakbrook Terrace, Illinois.

6. Defendant North American Automotive Services, Inc., d/b/a Ed Napleton Automotive Group ("NAAS"), is an Illinois corporation with its principal place of business at One Oakbrook Terrace, 6th Floor, Oakbrook Terrace, Illinois.

7. Defendant Napleton's Arlington Heights Motors, Inc., d/b/a Napleton's Arlington Heights Chrysler Dodge Jeep Ram ("NAH Chrysler"), is an Illinois business entity with its principal place of business at 1155 West Dundee Road, Arlington Heights, Illinois. It is owned and controlled by Defendants ENAG and/or NAAS.

8. Under theories of agency and respondeat superior, ENAG is liable for the actions of its agent NAH Chrystler.

9. In addition and/or in the alternative, under theories of agency and respondeat superior, NAAS is liable for the actions of its agent NAH Chrysler.At all

2

times relevant hereto, Defendants and their affiliates and subsidiary corporations acted by and through their agents, servants, and employees, who acted within the scope of their authority and within the course of their employment or engagement by Defendants and/or its affiliates or subsidiaries.

10. Defendants ENAG, NAAS, and NAH Chrysler (collectively, "Defendants" or "Napleton"), as well as the several unnamed automobile dealerships that ENAG and/or NAAS owns, operates, controls, and/or is affiliated with, have operated as a common enterprise while engaging in the violations of the Fair Credit Reporting Act alleged below. Defendants have conducted the business practices described below through an interrelated network of companies with common ownership, officers, managers, business functions, and employees. Because Defendants have operated as a common enterprise, each is jointly and severally liable for the conduct alleged herein.

### III. JURISDICTION AND VENUE

11. The Court has jurisdiction over this action, as Defendants are incorporated in Illinois, their principal places of business are in Illinois, and they own and operate nearly one hundred automotive dealerships, including several in Cook County, Illinois.

12. This Court has personal jurisdiction over Defendants because the acts and transactions giving rise to this action occurred in Cook County, and because Defendants conduct substantial business in Cook County.

3

## IV. FACTUAL ALLEGATIONS

*Legal Framework*

13. The FCRA strictly limits the circumstances under which someone may obtain a credit report (or "consumer report") from a consumer reporting agency ("CRA").

14. In relevant part, the statute provides as follows:

A person shall not use or obtain a consumer report for any purpose unless —

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under [FCRA section 1681b(a)]; and

(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b(f).

15. FCRA section 1681b(a) sets forth an exhaustive list of the purposes for which a consumer report can be lawfully furnished. Indeed, a "[CRA] may furnish a consumer report under the following circumstances and *no other*[.]" (emphasis added). 15 U.S.C. § 1681b(a).

16. Relevant here, a consumer report may only be furnished to someone who "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;" or who "otherwise has a legitimate business need for the information in connection with a business transaction that is initiated by the consumer[.]" 15 U.S.C. § 1681b(a)(3)(A), (F).

4

17. In relevant part, FCRA section 1681e(a) provides as follows:

> Every [CRA] shall maintain reasonable procedures designed . . . to limit the furnishing of consumer reports to the purposes listed under [FCRA] section 1681b[.] These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every [CRA] shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No [CRA] may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in [FCRA] section 1681b[.]

15 U.S.C. § 1681e(a).

*Defendants' Business Practices*

18. NAAS was first incorporated in Illinois in 1991 but traces its roots through a line of family-owned automotive dealerships and other automotive businesses as far back as 1931.

19. Collectively, ENAG and/or NAAS owns, operates, controls, and/or is affiliated with nearly 100 automotive dealerships in seven States, including 62 in Illinois.

20. Upon information and belief, as of November 2022, Defendants' revenue was estimated to be between $100 million and $1 billion. In 2023, Napleton had a net operating income of $10.2 million.

21. Automotive dealerships often procure credit reports about consumers seeking to purchase or lease a vehicle through a financing arrangement with the dealership. In such cases, the consumer completes a consumer credit or financing application or provides a written directive to the dealership, demonstrating their consent for the dealership to obtain a copy of their consumer credit report.

5

22. However, Defendants routinely disregard the FCRA's important privacy protections and, as in Plaintiff's case, obtain credit reports about consumers without first obtaining their consent and/or without otherwise having a permissible purpose, in violation of the FCRA.

23. Upon information and belief, Defendants' unlawful obtainment of consumer reports are the result of long-established, uniform practices and procedures that apply to its employees irrespective of the particular dealership at which each may work.

24. Upon information and belief, these uniform practices and procedures are established by ENAG and/or NAAS and apply to all those dealerships that it owns, operates, controls, and/or is affiliated with, including Defendant NAH Chrysler.

25. Indeed, on behalf of at the several dealerships that ENAG and/or NAAS owns, operates, controls, and/or is affiliated with, including Defendant NAH Chrysler, ENAG and/or NAAS contracts with a reseller CRA to obtain consumer reports from Experian and TransUnion, two of the largest CRAs in the United States.

26. Upon information and belief, on behalf of the several dealerships that ENAG and/or NAAS owns, operates, controls, and/or is affiliated with, ENAG and/or NAAS separately contracts directly with Equifax, another of the country's largest CRAs, to obtain consumer reports.

27. Upon information and belief, for the purposes of FCRA section 1681e(a), ENAG and/or NAAS, on behalf of itself and the several dealerships that it owns, operates, controls, and/or is affiliated with, including Defendant NAH Chrysler,

6

certifies to the CRAs with which it contracts to obtain credit reports about consumers that ENAG and/or NAAS will only acquire credits reports for which a permissible purpose to obtain them exists.

28. Upon information and belief, the several dealerships that are owned, operated, controled, and/or are affiliated with ENAG and/or NAAS, including Defendant NAH Chrysler, do not independently contract with any CRA for obtaining credit reports about consumers or certify to any CRA that they have a permissible purpose to procure credit reports about consumers.

29. That is, only ENAG and/or NAAS—and none of the several dealerships that ENAG and/or NAAS owns, operates, controls, and/or is affiliated with, including Defendant NAH Chrysler—has the contractual relationship with one or more CRAs and certifies to those CRAs that it purportedly has a permissible purpose under the FCRA for obtaining credit reports about consumers.

30. Thus, if one of the several dealerships that ENAG and/or NAAS owns, operates, controls, and/or is affiliated with, including Defendant NAH Chrysler, obtains a credit reports about a consumer, it does so under the auspices of ENAG and/or NAAS.

31. Additionally, if one of the several dealerships that ENAG and/or NAAS owns, operates, controls, and/or is affiliated with, including Defendant NAH Chrysler, obtains a credit report about a consumer in the absence of a credit application between the consumer on one hand and ENAG and/or NAAS on the other hand, it does so without a permissible purpose under the FCRA.

*Plaintiff's Experience*

32. On July 6, 2024, Plaintiff Olsen visited NAH Chrysler to consider the purchase of a particular vehicle from this dealership.

33. Plaintiff was explicit with NAH Chrysler that if he liked this vehicle, it would be a cash purchase and he was uninterested in financing.

34. As part of the vehicle test drive and negotiation process, an employee of NAH Chrysler took a copy of Plaintiff's driver's license and asked a series of questions of Mr. Olsen.

35. During the negotiation process, an employee of NAH Chrysler informed Plaintiff that price could be affected by whether Plaintiff would pay cash for the purchase or obtain financing through the dealership, pressuring Plaintiff to engage in financing through Defendants.

36. Plaintiff refused any financing option offered by NAH Chrysler and insisted all negotiations be on the basis of a cash purchase. Plaintiff never filled out or submitted any credit application.

37. The two parties were unable to come to an agreement, and Plaintiff did not purchase the vehicle.

38. At no time while Plaintiff was at NAH Chrysler, or before or after, did he provide permission for Defendants to procure a copy of his consumer credit report, nor did he sign any form or document, including any application for credit or financing.

39. Defendants had no permissible purpose to pull or obtain Plaintiff's consumer credit reports, as he neither applied for credit nor gave them written instruction or authorization to access his credit report.

40. Nevertheless, Defendant NAH Chrysler, pursuant to the uniform practice and policy of Defendants ENAG and/or NAAS, obtained consumer reports about Plaintiff from one or more CRAs.

41. On or about July 9, 2024, Plaintiff discovered that he had hard inquiries arising from Defendants' impermissible procurement of his consumer credit report on all three credit reports: Equifax, Experian, and TransUnion.

42. Angry and offended, Plaintiff promptly contacted NAH Chrysler and disputed the inquiries appearing on his consumer credit reports. He spoke with the NAH Chrysler representative who facilitated the test drive and with whom he engaged in negotiations. This employee confirmed his recollection that Plaintiff was uninterested in financing and that a potential purchase would be by cash only. This NAH Chrysler employee suggested that Plaintiff contact Napleton management.

43. Plaintiff subsequently spoke with a manager who first suggested Plaintiff must have filled out a credit application online, to which Plaintiff confirmed he had not. The manager then said he would investigate and report back.

44. To date, Defendants have not followed up with Plaintiff, and his subsequent calls to NAH Chrysler regarding this issue have gone unanswered.

45. Plaintiff also directly disputed the impermissible procurement of his credit reports to Equifax, Experian, and TransUnion. To date, however, the hard

9

inquiry information that resulted from Defendants' unauthorized pulls remains in his credit files, to his detriment.

46. As a result of Defendants' surreptitious and impermissible procurement of Plaintiff's consumer credit reports, he has suffered and continues to suffer harm to his credit scores, intrusion upon his seclusion and invasion of his privacy, and violation of his rights under FCRA section 1681b(f).

47. Plaintiff's experience is not unique. Online consumer reviews frequently reference Defendants' practice of obtaining consumers' credit reports without authorization.

48. For example, one consumer posted a review that stated:

Wish I could give 0 stars When i was there to look at a car decided to change my mind n go some where n they still ran my credit when I told them I was just browsing[.]

49. Another consumer posted a review that stated:

Worst car buying experience ever. They ran my credit when they said they were gonna contact my bank because i was pre approved through my bank before i came. When i asked the salesman a hour later whats going on he said finances was still talking with my bank. That was lie. They never contacted my bank. Go there if you feel like wasting your time.

50. Because Defendants failed to first obtain the consent of Plaintiff and members of the Class before procuring their credit reports, many members of the Class likely remain unaware of Defendants' violations of their FCRA-secured rights.

## V.  CLASS ACTION ALLEGATIONS

51. Plaintiff seeks to represent a Class defined as:

For the period beginning five (5) years prior to the filing of the Complaint through the date of class certification, individuals with an address in the United States and its Territories about whom Defendants, including any subsidiaries and/or affiliates thereof, obtained a consumer report and for whom Defendants' records do not contain any written authorization or credit application from the consumer dated within three calendar days of the date on which Defendants obtained the consumer report. Specifically excluded from the Class are Defendants, Defendants' officers, directors, trustees and agents, the judge assigned to this action, and any member of the judge's immediate family.

52. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

53. **Numerosity.** The members of the Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Class. Although the precise number of Class members is unknown to Plaintiff at this time, the true number of Class members is known by Defendants and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

54. **Commonality.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These include, without limitation, whether Defendants purchased a credit report about Class members, whether Defendants obtained authorization from

11

the Class member prior to obtaining a consumer report about them, whether Defendants' conduct was negligent, willful, or reckless; and whether members of the Class are entitled to statutory, actual, and/or punitive damages, and in what amounts.

55. **Adequacy**. Plaintiff is an adequate representative of the Classes because his interests are aligned with, and are not antagonistic to, the interests of the members of the Classes he seeks to represent. He has retained counsel competent and experienced in such litigation[1] and he intends to prosecute this action vigorously.

---

[1] *See, e.g., Brooks v. TransUnion, LLC,* No. 22-48-KSM, ___ F. Supp. 3d ___, 2024 WL 3625142 (E.D. Pa. Aug. 1, 2024) (Plaintiff's "attorneys are highly qualified, experienced, and capable. Plaintiff's law firm, [FMS], has served as class counsel in over 70 class actions. . . . FMS has been recognized for specialized expertise in litigating FCRA cases such as this one."); *Martinez v. Avantus, LLC,* 343 F.R.D. 254, 266 (D. Conn. 2023) (firm "has substantial experience in class action litigation, including FCRA class actions … [and] demonstrated proficiency at all stages of suit"); *Ramirez v. Trans Union, LLC*, 2022 WL 17722395 (N.D. Cal. Dec. 15, 2022) ("Courts have consistently recognized Francis Mailman Soumilas 'for its expertise in FCRA litigation and the high caliber of its work for the classes it represents.'"); *Der Hacopian v. SentryLink*, C.A. 18-3001 (ECF 66) (D. Md., Nov. 23, 2020 Hearing Transcript) (firm "many, many times in the past has been found to be not just qualified or competent, but extremely well-qualified and competent to represent consumer classes in many, many other jurisdictions, not only this particular jurisdiction"); *Kelly v. Business Information Group*, C.A. 15-6668, 2019 WL 414915, at *7 (E.D. Pa. 2019) (firm "qualified and experienced attorneys – Francis & Mailman, P.C., of Philadelphia … who have substantial experience in class action and FCRA consumer litigation and who are qualified to conduct the litigation."); *Flores v. Express Services Inc.,* No. 2:14-cv-03298-HB, 2017 WL 1177098, at *3 (E.D. Pa. Mar. 29, 2017) (firm "has extensive experience in consumer class action litigation); *Larson v. Trans Union, LLC*, C.A. 12-cv-05726, 2015 WL 3945052, at *12 (N.D. Cal. June 26, 2015) (appointing firm as class counsel on contested motion); *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 307 (N.D. Cal. 2015) (FMS "have represented consumer classes in many cases in many districts . . . [and] have shown their proficiency in this case[.]"); *White v. Equifax Info. Solutions*, No. 05-01070, 2014 WL 1716154, at *13, 19, 22 (C.D. Cal. May 1, 2014), *aff'd sub nom. Radcliffe v. Equifax Info. Sol'ns., Inc.*, 818 F.3d 537, 548 (9th Cir. 2016) (appointing FMS, Caddell & Chapman, and their team as interim class counsel over objections from a competing national law firm (Boies Schiller) because firm's team's "credentials and experience [we]re significantly stronger in class action and FCRA litigation."); and *Barel v. Bank of America*, 255 F.R.D. 393, 398-99 (E.D. Pa. 2009) (finding firm "competent, experienced and well-qualified to prosecute class actions" and noting that class counsel "have done an excellent job in representing the class in the instant litigation.").

Plaintiff and his counsel will fairly and adequately protect the interests of members of the Classes.

56. **Appropriateness.** A class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Classes to individually redress effectively the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proofs in a unified proceeding.

## VI. CLAIMS FOR RELIEF

COUNT I
*Violation of 15 U.S.C. § 1681b(f)*
*on behalf of Plaintiff and the Class*

57. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

58. Pursuant to sections 1681n and 1681o, Defendant is liable for negligently and willfully violating FCRA section 1681b(f) by unlawfully obtaining

credit reports about Plaintiff and members of the Class without a permissible, FCRA-authorized purpose.

59. Defendants and each of them are liable to Plaintiff and members of the Class for all the relief set forth in FCRA section 1681n and 1681o.

## COUNT II
*Invasion of Privacy/Intrusion upon Seclusion
on behalf of Plaintiff individually*

60. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

61. Plaintiff's consumer reports contain sensitive, personal, private information.

62. At no time did Plaintiff wish to disclose his consumer reports to Defendants or otherwise authorize them to obtain them.

63. Nevertheless, Defendants acquired Plaintiff's consumer reports without his authorization and/or consent.

64. Defendant's unauthorized acquisition of Plaintiff's consumer reports was highly offensive and/or objectionable.

65. Defendant's unauthorize acquisition of Plaintiff's consumer reports caused him anguish and suffering.

66. Having unlawfully intruded upon Plaintiff's seclusion, Defendants and each of them is liable to Plaintiff for all the relief available to him under the law.

### VII. **JURY TRIAL DEMAND**

67. Plaintiff demands trial by jury on all issues so triable.

14

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants for:

    A.    An order certifying this matter as a class action, naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

    B.    Actual damages, statutory damages, punitive damages, and attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o;

    C.    Actual and punitive damages pursuant to the common law of Illinois;

    D.    Pre- and post-judgment interest as may be allowed; and

    E.    Such other and further relief as may be necessary, just, and proper.

Dated:    December 20, 2024    Respectfully submitted,

    */s/Jordan M. Sartell*
Jordan M. Sartell
FRANCIS MAILMAN SOUMILAS, P.C.
310 South County Farm Road, Suite H
Wheaton, IL 60187
T: 215.735.8600
jsartell@consumerlawfirm.com

15

James A. Francis (*pro hac vice*)
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: 215.735.8600
jfrancis@consumerlawfirm.com

Amy L. Wells
WELLS LAW OFFICE, INC.
122 S. Michigan Ave., Ste. 1390-145
Chicago, IL 60603-6036
T: (312) 205-6363
F: (312) 205-6362
amywells@equaljusticelaw.com

*Attorneys for Plaintiff Brian Olsen*

16

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on the date indicated, he caused the foregoing document to be filed with the Court's CM/ECF system, which shall provide notice and a copy thereof to all counsel of record.

Dated: December 20, 2024    */s/Jordan M. Sartell*
                                                         Jordan M. Sartell